■ THEODORE BELL, as Administrator of the Estate of BARBARA BELL, Deceased, Appellant, v MALACHY COX, SR., Individually and as Parent and Natural Guardian of MALACHY P. COX, an Infant, et al., Respondents.—In an action to recover damages for wrongful death and conscious pain and suffering, in which the latter cause of action was dismissed by the trial court at the close of plaintiff's case, plaintiff appeals, on the ground of inadequacy, from a judgment of the Supreme Court, Richmond County, entered August 29, 1975, which is in his favor on the cause of action for wrongful death, upon a jury verdict in the amount of $10,000. Judgment reversed, on the law, and new trial granted as to the cause of action for wrongful death, upon the issue of damages only, with costs to abide the event, unless, within 30 days after entry of the order to be made hereon, defendants shall serve and file in the office of the clerk of the trial court a written stipulation consenting to increase the verdict from $10,000 to $25,000, and to the entry of an amended judgment accordingly, in which event the judgment, as so increased and amended, is affirmed, without costs or disbursements. The findings of fact as to liability are affirmed. The plaintiff recognizes that in *Amerman v Lizza & Sons* (45 AD2d 996, 998) this court, under the rule of *stare decisis,* held that it could not allow a recovery under the terms of the statute (EPTL 5-4.3) for grief, loss of society or loss of companionship, but argues that we should change our views. If the law in this regard is to be changed it must be by an amendment of the statute, or by its reinterpretation by the Court of Appeals (see *Sideman v Guttman,* 38 AD2d 420). The plaintiff also contends that, under the existing statute, there may be a recovery for past moneys expended in the rearing of the decedent. Although adoption of such a view has been suggested (51 Cornell L Q 425), and has been adopted as sound principle in *Currie v Fiting* (375 Mich 440), such a basic change in the interpretation given to the Estates, Powers and Trusts Law and its predecessor statute is not for this court to make. In this case the funeral bill was $3,277.61, and the total amount of money expended by plaintiff, including the funeral bill, totaled in the neighborhood of $6,000. Considering that fact, and the other relevant testimony in the record, we have come to the conclusion that, despite our rejection of the plaintiff's request that we reinterpret the law, the verdict of $10,000 is shockingly inadequate. Accordingly, the judgment appealed from should be reversed and a new trial granted as to damages only, unless the defendants stipulate to increase the verdict to $25,000 in accordance herewith. Martuscello, Acting P. J., Latham, Margett and Shapiro, JJ., concur; Cohalan, J., dissents and votes to affirm the judgment, with the following memorandum: This case presents a legal situation of the most exquisite irony, because, although justice has been done, the seeming inadequacy of the jury verdict presents a glaring anomaly in this age of tremendous money recoveries. The trial court charged, in part and without exception: "In an action for wrongful death, the measure of damages is the amount of money you the jury deem to be a

fair and just compensation for the pecuniary injuries resulting from the decedent's death, pecuniary injuries suffered by the mother and father of the decedent. Now, notice that the law limits the damages to the pecuniary —that is, money value of the decedent to her parents on the day she died. You may not consider or make any award for sorrow or mental anguish or loss of companionship." The jury followed the instructions literally. Its verdict of $10,000 presumably awarded about $4,000 over the funeral expenses. EPTL 5-4.3 ("Amount of recovery") pertinently states: "The damages awarded to the plaintiff may be such sum as the jury * * * deems to be fair and just compensation for the pecuniary injuries resulting from the decedent's death to the persons for whose benefit the action is brought." "Pecuniary" is defined (see Webster's New International Dictionary) as "1. consisting of money; exacted or given in money; as a pecuniary reward; also entailing a money penalty. 2. relating to money; monetary." The word derives from the Latin "pecuniarius"—originally property or cattle. The record reveals that the deceased was a young lady of 19 years; that she was a loving and considerate daughter; that when she worked she contributed small sums of money at home; that both of her parents were gainfully employed; that at the time of her death she was living in an apartment with two other girls; and that even then she visited frequently with her parents. It presents a picture of her parents in their middle years—suddenly and irrevocably bereft of their one child. The sympathy evoked by the circumstance of her life—and untimely death—would seem to militate in favor of a much larger recovery. Yet the court, and more especially the jury—in the face of the applicable law—would have stultified themselves and would have been false to their oath if, in their deliberations, they had given consideration to anything other than pecuniary loss. The law reports are replete with case histories wherein jury awards in similar circumstances have been grossly excessive. In such instances trial or appellate courts have reduced the recovery to reasonable amounts. But if consideration is to be given to damages other than pecuniary in wrongful death cases, the change must be effected by the Legislature and not by the courts. I would affirm.