**Alexander S. WALKES, Individually and as Administrator of the Goods, Chattels and Credits which were of Hannah Walkes, Deceased, Plaintiff,**

v.

**Milton H. WALKES and Sally Walkes, Defendants.**

No. 77 Civ. 4759 (GLG).

United States District Court, S. D. New York.

Feb. 20, 1979.

As Amended April 4, 1979.

---

**19.** See text at note 10, *supra.*

Smiley, Schwartz & Captain, New York City, for plaintiff by Guy I. Smiley, New York City, of counsel.

Rein, Mound & Cotton, New York City, for defendants by Robert L. Horkitz, New York City, of counsel.

## OPINION

GOETTEL, District Judge.

In this wrongful death action, brought in federal court by virtue of diversity of citizenship, the defendants have moved to dismiss, asserting that the plaintiff cannot, as a matter of law, satisfy the $10,000 amount in controversy requirement. The defendants in this action are both domiciliaries of New York, while the plaintiff, as was his decedent, is a domiciliary of Florida. The motion presents the question of which state's law, that of New York or Florida, should be applied in measuring the plaintiff's damages, and whether, under the law deemed applicable, the plaintiff can allege sufficient damages to meet the jurisdictional amount.

The plaintiff, Alexander Walkes, and the decedent, Hannah Walkes, were husband and wife, a retired couple who resided in the state of Florida since 1960. (Prior to retirement they had been New York residents.) In July of 1977, the plaintiff and decedent paid a visit to the defendants,

Milton and Sally Walkes, their son and daughter-in-law, at the children's home in Tarrytown, New York. During that visit the decedent, allegedly as a result of negligence on the part of the defendants,[1] tripped and fell down a flight of stairs, suffering critical injuries. The decedent was pronounced dead on arrival at Phelps Memorial Hospital in Westchester, New York.

Following the death of the decedent, letters of administration were issued to the plaintiff in Florida. The plaintiff has continued to reside in Florida.

The choice of law issue presented in the instant motion has arisen due to the differing measures of recoverable damages under the Florida and New York wrongful death statutes. Under the Florida law, Fla.Stat. Ann. § 768.21 (1972), damages may be recovered for grief, mental anguish and loss of companionship, as well as for actual pecuniary loss. New York's wrongful death statute, N.Y.Est., Powers & Trusts Law § 5–4.3 (McKinney's 1967), permits compensation for pecuniary loss only.

Since federal jurisdiction over this case is based upon diversity of citizenship this Court is compelled to apply the choice of law rules of New York, the forum state, in determining the applicable substantive law. *Klaxon v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

Until recently the accepted choice of law rule in the area of torts was that the law of the place of the wrong (the *lex loci delicti*) would govern every issue which arose in connection with that tort. *See, e. g., Poplar v. Bourjois Inc.,* 298 N.Y. 62, 80 N.E.2d 334 (1948). This rule, however, was abandoned in New York in *Babcock v. Jackson,* 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963). In that case the New York Court of Appeals, noting that the traditional torts rule could often lead to "unjust and anomalous results," *id.* at 479, 240 N.Y.S.2d

at 747, 191 N.E.2d at 282, held that "[j]ustice, fairness and 'the best practical result' . . . may best be achieved by giving controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." *Id.* at 481, 240 N.Y.S.2d at 749, 191 N.E.2d at 283.

This "governmental interest" standard, focusing on applying the law of the state having the most significant concern with the issues involved, has been developed by the New York courts in a long series of cases, particularly in those involving automobile guest-host statutes, *see, e. g., Towley v. King Arthur Rings,* 40 N.Y.2d 129, 386 N.Y.S.2d 80, 351 N.E.2d 728 (1976); *Neumeier v. Kuehner,* 31 N.Y.2d 121, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972); *Tooker v. Lopez,* 24 N.Y.2d 569, 301 N.Y.S.2d 519, 249 N.E.2d 394 (1969), and those involving wrongful deaths, (most frequently in situations where the situs of the accident was a state in which a specific maximum recovery was imposed). *See, e. g., Thomas v. United Air Lines, Inc.,* 24 N.Y.2d 714, 301 N.Y.S.2d 973, 249 N.E.2d 755 (1969); *Miller v. Miller,* 22 N.Y.2d 12, 290 N.Y.S.2d 734, 237 N.E.2d 877 (1968); *Tjepkema v. Kenney,* 31 A.D.2d 908, 298 N.Y.S.2d 175 (1st Dep't 1969).

In the guest-host statute area, the New York Court of Appeals has developed a set of rules by which to decide such cases. *Neumeier v. Kuehner, supra.* Although these rules have not been extended to apply to wrongful death actions, they are useful in providing a general approach for the choice of law decision at hand.

■ To determine the applicable law in the instant action, it is necessary for this Court to analyze, as would the state courts, the respective interests of New York and Florida. Both of those states arguably have an interest in the measure of damages which the plaintiff may recover.

The plaintiff contends that Florida, the state where he is domiciled, as well as

---

1. The plaintiff alleges that the accident resulted from the defendant's failure, despite having had actual notice of the condition prior to the accident, to repair a loose sill which held the

carpeting in place. The defendant's son (who is represented by his insurance company's attorney) essentially admitted, during the course of his deposition, to his negligence.

where the estate of the decedent is being administered, is the state of greatest concern. The plaintiff bases this contention on a line of cases which have held that, "[t]he predominant interests to be served on the issue of damages are those of the states containing the people or estates which will receive the recoverable damages, if any, for their injuries or their decedent's death." *Thomas v. United Air Lines*, 24 N.Y.2d at 724, 301 N.Y.S.2d at 979, 249 N.E.2d at 759–760, *quoting Manos v. Trans World Airlines*, 295 F.Supp. 1170, 1173 (N.D.Ill. 1969). *See Long v. Pan American World Airways*, 16 N.Y.2d 337, 266 N.Y.S.2d 513, 213 N.E.2d 796 (1965); *Juodis v. Schule*, 79 Misc.2d 955, 361 N.Y.S.2d 605 (Sup.Ct.1974).

■ Despite the concern Florida may have with the instant action, however, the Court believes that New York's interests predominate. New York is both the domicile of the defendants as well as the situs where the wrongful death occurred. Unlike the "in transit" accidents involved in such cases as *Kilberg v. Northeast Airlines*, 9 N.Y.2d 34, 211 N.Y.S.2d 133, 172 N.E.2d 526 (1961), *Thomas*, and *Long*, cited by the plaintiff, the instant action is a "fixed location" case in which there was nothing fortuitous as to where the injury occurred. *Belisario v. Manhattan Motor Rental, Inc.*, 48 A.D.2d 477, 370 N.Y.S.2d 574 (1st Dep't 1975); *Franklin v. Nelson Freightways, Inc.*, 408 F.Supp. 670, 672 (E.D.N.Y.1976). Contrary to the air disaster cases (relied upon heavily by the plaintiff), *see e. g., Gore v. Northeast Airlines*, 373 F.2d 717 (2d Cir. 1967); *Kilberg v. Northeast Airlines, supra*, where the defendants had engaged in conduct in the state of the plaintiff's or decedent's domicile (*i. e.*, had solicited business there), here all of the allegedly tortious conduct by the defendants was done within New York State. In a situation such as this the Court believes, as was stated by Professor Willis L. M. Reese, the Reporter for the Conflicts of Laws Restatement, that the factors strongly militate in favor of a principle that, "a person should not be held liable for a greater measure of damages than that provided by the law of the state where he was domiciled, where he acted, and where the injury occurred." Reese, *Choice of Law in Torts and Contracts and Directions for the Future*, 16 Colum.J. Trans.L. 1, 14 (1977). In the instant action New York clearly has a strong interest in having its law applied to protect the defendant. *See Neumeier v. Kuehner, supra.*

Nevertheless, it may be argued that the decision of the Court of Appeals for the Second Circuit in *Rosenthal v. Warren*, 475 F.2d 438 (2d Cir. 1973) (applying New York's choice of law rules) lends support to the position that Florida law should be applied. In *Rosenthal* the court was presented with a New York decedent who had gone to Massachusetts for medical treatment, was operated on by a Massachusetts doctor, and who died soon thereafter. Unlike the present case, however, the court was also faced with a Massachusetts law under which recovery for wrongful death was limited to $50,000. Finding the Massachusetts rule to be archaic, unjust and based upon a past misconception that no common law right of action existed for a wrongful death, the court chose to apply New York law, noting that New York had a strong policy to protect its residents against wrongful death limitations.[2] *See also Pancotto v. Sociedade de Safaris de Mocambique, S.A.R.L.*, 422 F.Supp. 405, 411 (N.D. Ill.1976) (Illinois law applied even though Mozambique's interests predominated, the court concluding that "the Illinois courts would refuse to enforce the Portugese [Mozambique's former colonial ruler] limitation as unreasonable and contrary to Illinois public policy.")

New York's wrongful death statute, unlike the Massachusetts statute in *Rosenthal*, is not one which can be characterized as

---

**2.** A survey of New York conflict of laws decisions reveals that the New York courts have consistently refused, as a matter of public policy, to apply foreign wrongful death limitations against a New York plaintiff, regardless of the strong interest that a foreign jurisdiction may have. *See e. g., Miller v. Miller*, 22 N.Y.2d 12, 290 N.Y.S.2d 734, 237 N.E.2d 877 (1968); *Kilberg v. Northeast Airlines*, 9 N.Y.2d 34, 211 N.Y.S.2d 133, 172 N.E.2d 526 (1961); *Tjepkema v. Kenney*, 31 A.D.2d 908, 298 N.Y.S.2d 175 (1st Dep't 1969); *MacKendrick v. Newport News Shipbuilding & Dry Dock Co.*, 59 Misc.2d 994, 302 N.Y.S.2d 124 (Sup.Ct.1969).

"unjust" or "archaic." It is a modern law which places no limitation on the amount which may be recovered.[3] Application of New York's statute to the instant action, while potentially affording somewhat less recovery than available under Florida law, will adequately ensure that Florida's interest in compensation for its domiciliary will be satisfied. The Court can find no strong policy consideration, as in *Rosenthal* or *Pancotto*, mitigating against application of the law of the state with the greatest concern, and therefore holds New York law applicable for determining damages in the instant action.

■ Having determined that New York law applies, the Court must next decide whether the plaintiff can allege sufficient damages under that law so as to satisfy the $10,000 jurisdictional amount.

Under the terms of New York's wrongful death statute, N.Y.Est., Powers & Trusts Law § 5–4.3 (McKinney's 1967), the plaintiff may recover "fair and just compensation for the pecuniary injuries resulting from the decedent's death." Also included as recoverable damages are expenses for medical and nursing care which were incidental to the death, and funeral expenses.

At the time of her death, the decedent, Hannah Walkes, was eighty-one years old. Although she suffered from mild hypertension and mild adult onset diabetes, she was apparently in reasonably good health for a woman of that age. Prior to the accident she was able to clean the house everyday, wash and iron the clothes, and cook for herself and her husband.

The defendants allege that the only recoverable damages suffered by the plaintiff were those resulting from the expenditure of $2,300 for funeral costs. The Court cannot agree. According to joint life expectancy tables, the plaintiff had a life expectancy of less than six years. The decedent and her husband (the plaintiff) had a joint expectancy of a somewhat shorter period. During that period it could be expected that the decedent would have continued to perform her household tasks during her husband's life. While it is difficult to assess a monetary value to this type of work, it was clearly of value to the plaintiff. In a study prepared by the United States Department of Agriculture it was estimated that the annual value of housework performed by an unemployed wife fifty-five years of age and older was $4,100. *Family Economics Review* at 12 (Fall, 1973). Although the value of work performed by an eighty-one year old woman would seemingly be less, it would still appear potentially to be a significant amount, depending on the proof presented at trial.

The plaintiff also contends that he is entitled to recover for loss of consortium. While the right to recover for such loss has been recognized in a personal injury action, *Millington v. Southeastern Elevator Co.*, 22 N.Y.2d 498, 293 N.Y.S.2d 305, 239 N.E.2d 897 (1968), it is unclear whether such recovery is available under New York's wrongful death statute. The New York courts have split in their opinions, some holding loss of consortium to be a compensable injury in wrongful death, *Ventura v. Consolidated Edison*, App.Div., 411 N.Y.S.2d 277 (1st Dep't 1978); *Martins v. Ford*, 53 A.D.2d 887, 385 N.Y.S.2d 620 (2d Dep't 1976) (dictum); *Lehman v. Columbia Presbyterian Medical Center*, 93 Misc.2d 539, 402 N.Y. S.2d 951 (Sup.Ct.1978), and others holding to the contrary. *Osborn v. Kelley*, 61 A.D.2d 367, 402 N.Y.S.2d 463 (3d Dep't 1978); *Tucker v. City of New York*, 54 A.D.2d 930, 388 N.Y.S.2d 133 (2d Dep't 1976); *Bell v. Cox*, 54 A.D.2d 920, 388 N.Y. S.2d 118 (2d Dep't 1976).

The uncertainty created by this split of opinion has led some New York trial courts

---

**3.** Under the terms of N.Y.Const. art. I, § 16, no statutory limitation may be placed on the dollar amount recoverable in an action for wrongful death.

It should be noted that many states which once imposed statutory limitations now permit unlimited recovery. In *Miller v. Miller*, 22 N.Y.2d 12, 290 N.Y.S.2d 734, 237 N.E.2d 877 (1968), for instance, the law of Maine (the *lex loci*) was amended between the time of the decedent's death and the time of trial, so that a $20,000 limitation on recovery was repealed and unlimited recovery provided for (this repeal, however, was not given a retroactive effect by the Maine courts).

to defer decision on this difficult issue so as to provide the New York Court of Appeals with an opportunity to clarify the situation. *See Hromin v. Port Authority of New York & New Jersey,* Vol. 181—No. 23 N.Y.L.J. at 6 col. 5 (Sup.Ct., Feb. 1, 1079). Such a course would be the wisest one in this action. Of course, should the New York Court of Appeals choose not to reach the question, or should the instant action come to trial prior to a Court of Appeals determination, it would then be the duty of this Court to make a reasoned attempt at determining how the Court of Appeals would rule on the issue. *Bernhardt v. Polygraphic Co.,* 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956); *Birnbaum v. United States,* 588 F.2d 319 at 325 (2d Cir. 1978). At this time, however, the Court believes it would be premature to rule on the question.

In light of the foregoing, the plaintiff may be able to prove sufficient damages under New York's wrongful death statute to satisfy the $10,000 jurisdictional amount. Accordingly, the defendant's motion to dismiss is denied.

SO ORDERED: